UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| **BOBBY WHITE,**<br>     Plaintiff, | |
| v. | Case No. 4:23-cv-506-CLM |
| **AMENTUM SERVICES, INC.**<br>     Defendant. | |

## MEMORANDUM OPINION

Bobby White sues his former employer, Amentum Services, Inc., for race discrimination under Title VII and 42 U.S.C § 1981. (Doc. 1). Amentum asks the court to grant it summary judgment. (Doc. 15). For the reasons explained below, the court **GRANTS** Amentum's motion on all counts.

## BACKGROUND

Amentum destroys non-chemical weapons. To do so, Amentum uses a Static Detonation Chamber ("SDC") located in a facility in Anniston, Alabama. Bobby White, a black man, began working for Amentum as an Instrument & Control Technician at the SDC in Anniston in 2014. White's job included a mix of mechanical and electrical work. White's highest level of education consists of two associate degrees: one in industrial electronic technology and the other in refrigeration technology.

**1.    Promotions**

White alleges Amentum refused to promote him three times because of his race. Amentum argues that each time it failed to promote White, it did so in favor of a more qualified applicant regardless of race. Defendants focus their motion on three instances, which the court summarizes below.

### A. Stacey Martin

The first happened in 2019 when Amentum promoted Stacey Martin to the position of Automation Specialist. Martin (a white male) and White both applied for the open position. Amentum chose Martin because "he was best qualified for the job." (Doc. 17, ¶5). Martin had "decades of experience in automation," and White "admits he is not more qualified than Martin." (*Id.*, ¶¶ 6–7).

### B. Brandon Liles

Amentum next promoted Liles (another white man) over White in 2021. Both Liles and White applied for an open Systems Engineer job that required a bachelor's degree in chemical or mechanical engineering. Liles, unlike White, held the requisite degree and was, according to Amentum, the "best qualified candidate." (*Id.*, ¶¶ 9–10). Amentum rejected both white and black applicants who lacked the required engineering degree.

### C. Tim Connell

Most recently, in 2022 Amentum promoted a white man named Tim Connell over White to the position of Maintenance Superintendent—"a support role [that] ensure[s] the crew has the material and support for maintenance work the crew conducts." (*Id.*, ¶13). Connell and White possessed some similarities: both met the basic job qualifications; both interviewed with Steven Warren, Brian Brasher, Scott Bullard, and Lisa Strickland; and both answered the same set of interview questions.

The men also differed. White owned his own HVAC company and had years of I&C Tech experience (including electrical experience) that Connell lacked. Warren testified that in his interview, White had "trouble explaining just the basic concepts of how the plant performed and why specific portions of the plant operated the way it did." (Doc. 16-4, p. 103:6–

9). Warren also testified that White "didn't give a good interview. He just did not give a good interview." (*Id.,* p. 104:7–9).[1]

In contrast, Warren testified that Connell had a "very, very good interview." (*Id.,* p. 216:16–17). Unlike White, Connell served as a maintenance crew leader in the military and had experience rigging, welding, and scaffolding—qualifications desired for the Maintenance Superintendent job that White lacked. Amentum cited Connell's military and supervisory experience when picking him for the promotion:

> Mr. White's qualifications for the Maintenance Superintendent position were evaluated fairly and in accordance with Amentum's policies and hiring practices. Based on their prior work experiences end their interviews, Amentum selected the strongest and most qualified candidate for the Maintenance Superintendent position. Mr. Connell was selected because of his extensive chemical and conventional demilitarization experience, his considerable. mechanical maintenance experience and knowledge of overall SDC process, his supervisory experience and his certifications in desired skill areas. Simply put, the selected candidate was hired because he was considered more qualified than Mr. White. The selection decision was based solely on the individual's qualifications and ability to-perform the work required of the position.

(Doc. 16-8, p. 23) (Amentum's response to White's EEOC charge).

Contemporaneous documentation supports Amentum's response. Amentum employs an internal process for hiring and promoting employees meant to ensure diverse candidates receive fair treatment during the application process. Amentum compares job applicants by their

---

[1] White notes that Warren failed to note his concerns on White's interview questionnaire. (Doc. 16-7, p. 29–31). But, according to Warren, Amentum didn't require interviewers to write every detail, thought, or response on the interview questionnaire. (*Id.,* p. 59:8–63:6).

resumes, interviews, and how they compare to Amentum's designated qualifications for open positions. Amentum uses a series of matrices when promoting. Here was the matrix Amentum submitted to the EEOC:



(Doc. 16, 10) (circles added). The matrix is hard to read here given size, so the court circles the four categories where Connell outscored White:

- Previous experience in a Maintenance Supervisor/ Superintendent role;
- Experience planning and executing plant maintenance outages;
- Currently hold or previously held certifications in Rigging and Welding; and,
- Currently hold or previously held a certification relating to scaffold building.

(*Id.*). Based on these distinctions, Connell outscored White 18 to 14 and was thus offered the position:



(*Id.*). As noted on the matrix, White "passed the interview" but was not selected because he was "not most qualified based on [e]xperience." (*Id.*).

White argues that the matrix incorrectly scored three categories and thus the score should favor Connell 16 to 15, not 18 to 14. (Doc. 24, ¶23). Because White is the non-moving party, the court assumes White is correct. Amentum responds that, even if that assumption is right, and the score changes are made, Connell still outscored White:

| Candidate Name | 1. DQ- Experience performing maintenance in a demilitarization plant. | 2. DQ -Five (5) years' experience performing maintenance on a Static Detonation Chamber system. | 3. DQ -Obtained Mechanical and/or I&C Technician certification at the Anniston Static Detonation Chamber. | 4. DQ -Obtained Lead certification at the Anniston Static Detonation Chamber. | 5. DQ -Previous experience in a Maintenance Supervisor/Superintendent role. | 6. DQ -Experience generating boundaries for Lock Out/Tag out and be willing to obtain a Lock Out/Tag Out certification. | 7. DQ -Experience planning and executing plant maintenance outages. | 8. DQ -Experience with software systems related to Work Order Development and Management. | 9. DQ -Currently hold or previously held certifications in Rigging and Welding. | 10. DQ -Currently hold or previously held a certification relating to scaffold building | 11. DQ -Experience in facilities maintenance relating to Boilers and HVAC systems. | 12. DQ -Experience generating, reviewing, and modifying Maintenance Procedures. | Interview Rating (Total of MQ and DQ) |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Timothy "Tim" Connell | 1 | 0 | 1 | 0 | 0 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 16 |
| White, Bobby C | 1 | 1 | 1 | 0 | 1 | 1 | 0 | 1 | 0 | 0 | 1 | 1 | 15 |

(Doc. 29, p.13). More importantly, Amentum says, White does not dispute that only Connell possessed the desired rigging, welding, and scaffolding certificates circled above. So Connell was the more qualified candidate.

At no point did an Amentum employee make a racially disparaging remark to White. White's complaint centers on his belief that he's more qualified than Connell, so Amentum must have chosen Connell over him because Connell is white and White is black.

## STANDARD

In reviewing a motion for summary judgment, this court views the facts and draws all reasonable inferences in the light most favorable to the non-moving party. *See Cuesta v. Sch. Bd. of Miami-Dade Cty.*, 285 F.3d 962, 966 (11th Cir. 2002). Summary judgment is appropriate when there is no genuine dispute of material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*

*v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The party asking for summary judgment always bears the initial responsibility of telling the court of the basis for its motion and identifying those portions of the pleadings or filings which it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, Rule 56 requires the non-moving party to go beyond the pleadings and—by pointing to affidavits, or depositions, answers to interrogatories, and admissions on file—designate specific facts showing that there is a genuine issue for trial. *Id.* at 324.

## DISCUSSION

White pleads one count: race discrimination under Title VII and 42 U.S.C. § 1981. The court starts by defining its parameters.

### A. Only White's claim about the maintenance superintendent position is before the court.

In their supporting brief, Defendants treat Count 1 as pleading three distinct claims: race discrimination for (1) promoting Stacey Martin to the position of Automation Specialist in 2019; (2) promoting Brandon Liles for an open Systems Engineer job in 2021; and, (3) promoting Tim Connell to Maintenance Superintendent in 2022. *See* (doc. 17). But in his brief in opposition, White argues only that a jury should determine whether Amentum promoted Tim Connell to maintenance superintendent rather than White because of race. *See* (doc. 24). In fact, White never mentions Martin or Liles in his brief. (*Id.*). So the court finds that, even if White pleaded distinct claims about the Martin and Liles promotions, White has abandoned those claims and/or admitted Amentum's assertion that neither was based on race because White failed to address Amentum's fact pleadings and arguments about Martin or Liles in his brief in opposition. *See* Fed. R. Civ. P. 56(e)(2) (allowing the court to consider facts undisputed if the opposing party fails to properly address them); *Resol. Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th

6

Cir.1995) ("grounds alleged in the complaint but not relied upon in summary judgment are deemed abandoned").[2]

### B. Rule 56 is the proper framework, not *McDonnell Douglas.*

As a result, the only question before the court is whether Amentum is entitled to summary judgment on White's claim that Amentum promoted Connell over White because of race. Again, White pleads this claim under Title VII and § 1981. "Both statutes require the same proof and analytical framework." *Berry v. Crestwood Healthcare LP*, 84 4th 1300, 1307 (11th Cir. 2023). So the court analyzes White's claims together.

Before it does, though, the court clears up the proper framework. Both parties rightly recognize that this circuit is in a state of flux about using the three-step, burden-shifting *McDonnell Douglas* framework when judging employment discrimination claims. Recently, some circuit panels have signaled a reversion to a simpler, Rule 56-based question: Is there a "sufficient evidentiary basis for the jury to find that the defendant intentionally discriminated against the plaintiff?" *Tynes v. Fla. Dep't of Juv. Just.*, 88 F.4th 939, 947 (11th Cir. 2023) (citing *Cleveland v. Home Shopping Network, Inc.*, 369 F.3d 1189, 1194 (11th Cir. 2004)). And in a recent Title VII case, Justice Thomas likewise criticized courts using *McDonnell Douglas* when judging Rule 56 motions and said that "litigants and lower courts are free to proceed without the *McDonnell Douglas* framework." *Ames v. Ohio Dep't of Youth Servs.*, 145 S. Ct. 1540, 1555 (2025). The court thus applies Rule 56, not *McDonnell Douglas.*

---

[2] While White told the EEOC that he was "passed over for several positions" in his EEOC charge, White only specified Amentum's decision to hire Connell over him in 2022. (Doc. 1-1). It is thus arguable that White did not permit the EEOC to investigate the Liles and Martin promotions. Amentum notes this fact in its opening brief, *see* (doc. 17, p.9), but Amentum does not argue that White failed to exhaust his administrative remedies for the Martin and Liles promotions. Amentum argues instead that White abandoned any related claims by not addressing them in his brief in opposition. (Doc. 29, pp. 6-7). In either case, the result is the same.

### C. There is no genuine dispute that Amentum promoted Connell over White for a race-neutral reason.

1. *Amentum's evidence of non-discrimination*: Rule 56(a) starts with the moving party's burden to show there is no genuine dispute about a material fact, so this court follows suit.

Title VII and §1981 prohibit Amentum from failing to promote White because of his race. 42 U.S.C. § 2000e; 42 U.S.C. § 1981. White must therefore prove as a matter of fact, among other things, that race was a but-for cause of Amentum's decision. Amentum says there is no genuine dispute that it promoted Connell instead of White for a combination of three race-neutral reasons:

- Supervisory experience: Connell supervised a maintenance crew in the military, which Amentum found more applicable to the position than White's HVAC supervisory experience (doc. 16-4, p. 151:17–154:18);

- Qualifications: Connell possessed desired certifications in welding, scaffolding, and rigging (doc. 16-4, p. 159: 18–22) that White did not (doc. 16-9, ¶ 5); and,

- Electrical Work: Because the majority of SDC's work is mechanical, not electrical (doc. 16-9, ¶ 2), White's electrical experience was less relevant than Connell's for the requirements of Maintenance Superintendent.

Amentum supports its assertions of fact with documentary evidence like the 2021 job description (doc. 16-7, pp. 76-82); the 2022 decision matrix (doc. 16-7, p. 68); a job requirement comparison chart (doc. 16-7, p. 37); Connell and White's resumes, interview notes, and interview feedback (doc. 16-7, pp. 3-5, 29-36, 46-66); and, a contemporaneous explanation why Connell was the preferred candidate (doc. 16-7, p. 90). For example, the 2021 job description stated both that (a) Amentum preferred someone who worked on demilitarization and (b) had certificates in rigging, welding, and scaffold building:

8

> **Desired Qualifications:**
> - Experience performing maintenance in a demilitarization plant.
> - Five (5) years' experience performing maintenance on a Static Detonation Chamber system.
> - Obtained Mechanical and/or I&C Technician certification at a Static Detonation Chamber.
> - Obtained Lead certification at a Static Detonation Chamber.
>
> **amentum**
>
> **SDC ANNISTON JOB DESCRIPTION**
>
> **Working Title:** Maintenance Superintendent
>
> - Previous experience in a Maintenance Supervisor/Superintendent role.
> - Experience generating boundaries for Lock Out/Tag out and be willing to obtain a Lock Out/Tag Out certification.
> - Experience planning and executing plant maintenance outages.
> - Experience with software systems related to Work Order Development and Management.
> - Currently hold or previously held certifications in Rigging and Welding.
> - Currently hold or previously held a certification relating to scaffold building.
> - Experience in facilities maintenance relating to Boilers and HVAC systems.
> - Experience generating, reviewing, and modifying Maintenance Procedures.

(Doc. 16-7, pp. 76-77) (circles added). Amentum's written statement about why it chose Connell over White lists these desired attributes as part of the reason:

> Mr. Connell has taken the initiative to complete his SDC Lead certification card and only has his Board Review remaining to complete before being Lead certified. It was also noted during the interview that Mr. Connell has taken the initiative to become a certified welder and completed a scaffold building certification, which are two of the desired qualifications of the Maintenance Superintendent position.
>
> . . .
>
> Given Mr. Connells years of chemical and conventional demilitarization experience, his level of mechanical maintenance experience and knowledge of the overall SDC process, coupled with his prior supervisory experience, and demonstrative initiative, Mr. Connell is the selected candidate. A promotion from Mechanical Technician/Munitions Handler to the position of Maintenance Superintendent would be considered a next step in Mr. Connell's development and career path.

(Doc. 16-7, p 90). And Amentum offered declarations and deposition testimony from decision makers that support these reasons. *See, e.g.*, (doc. 16-4) (deposition of Steven Warren); (doc. 16-9) (declaration of Brian Brasher).

The court finds that Amentum presents enough evidence to support a finding that Amentum's decision to promote Connell over White was based on desired qualifications, not race. Amentum is therefore entitled to summary judgment unless White offers evidence that supports a different, discriminatory reason that Amentum didn't promote him—*i.e.*, because of his race. *See* Fed. R. Civ. P. 56(c); 56(e).

2. *White's evidence of discrimination*: White offers no direct evidence that race played a role in Amentum's decision. White admits that Steven Warren was the ultimate decisionmaker, *see* (doc. 17, ¶ 35), and White testified that he was not claiming that Warren or any other Amentum employee except Brian Brasher discriminated against him based on race. *See* (doc. 16-1, p. 19) (White's testimony); (doc. 17, ¶ 36) (undisputed that "plaintiff, himself, does not believe that Warren discriminated against him"). As for Brian Brasher, White testified that the only reason he believes Brasher discriminated against him because of race was that White kept getting passed over for promotions; Brasher had never used any racially charged language around him.[3] (Doc. 16-1, pp. 18-19).

White instead points out three purported flaws in Amentum's stated nondiscriminatory reasons for choosing Connell over him, arguing that a reasonable juror could consider cracks in these nondiscriminatory reasons as evidence that race was the real reason for Amentum's choice. The court reviews them below, keeping in mind that White cannot prevail by "simply arguing or even by showing that he was better qualified than the [person] who received the position he coveted. . . . [A] plaintiff must show that the disparities between the successful applicant's and his own qualifications were of such weight and significance that no reasonable person, in the exercise of impartial judgment, could have chosen the candidate selected over the plaintiff." *Springer v. Convergys Customer Mgmt. Grp. Inc.*, 509 F.3d 1344, 1349 (11th Cir. 2007) (internal citation omitted).

---

[3] As explained, White did not contest any of Amentum's undisputed facts about the Martin and Liles promotions (undisputed facts #5-12) and did not argue that either promotion was discriminatory. So, under Rule 56(e)(2), the court assumes that Brasher had legitimate nondiscriminatory reasons for choosing Martin and Liles over White.

a. <u>Electrical Work:</u> White first argues that, in its brief supporting summary judgment (doc. 17, p. 17), Amentum wrongly describes White's employment history as being "limited to electrical work." (Doc. 24, p. 20). White points out that, in addition to electrical experience, he possessed I&C Tech skills and experience with air conditioning, refrigerators, SDC maintenance, and automation. (Doc. 16-1, p. 27:16–19).

But White's argument focuses on the wrong parties: Amentum's lawyers, not Amentum's decisionmakers. As Amentum puts it, "defense counsel's presentation of arguments at summary judgment cannot be evidence of pretext with respect to an employment decision made years before the filing of the brief." (Doc. 29, p. 8). Though Amentum's opening brief may not fully describe White's skillset, no evidence suggests that, in 2022, Amentum's decisionmakers considered White's experience as being "limited to electrical work." To the contrary, the evidence suggests that the decisionmakers were fully aware of White's complete work history at the time they chose Connell over him. On White's candidate matrix, Amentum credited him with "[e]xperience performing maintenance in a demilitarization plant," "experience performing maintenance on a Static Detonation Chamber," "[o]btained mechanical and/or I&C technician certification," and "[e]xperience in facilitates maintenance relating to Boilers and HVAC systems." (Doc. 16-10) (emphasis added). Bullard noted White's "30+ yrs. Elec., I&C, Automation, & HVAC" experience, including that White "had own HVAC business" on his interview notes. (Doc. 16-7, p. 29). Strickland similarly noted White's "Maint 30+ years" on her interview notes. (Doc. 20-1, p. 2).

In short, White presents no evidence that supports his argument that Amentum's decisionmakers were unaware of White's work experience at the time they promoted Connell over him. That Amentum's lawyers may have later mischaracterized or understated White's experience is beside the point. Amentum characterizing White's experience as "limited to electrical work" in a brief supporting summary judgment does not create a genuine issue of disputed fact that can defeat summary judgment.

b. <u>Supervisory experience:</u> White next argues that Amentum puts too much weight on Connell's military and supervisory experience. (Doc. 24, p. 24–28). According to White, he supervised three on-call employees as the owner of an HVAC company and discussed this experience during his interview. (Doc. 16-1, p. 107: 1–19). Strickland, Warren, and Bullard testified to knowing about the HVAC company and White's supervisory role within it. *See* (doc. 24, p. 26). But Amentum seemingly failed to credit White for this supervisory experience on his interview matrix. (Doc. 16-10). According to White, Amentum's failure to note its knowledge of his supervisory experience on the matrix shows that Amentum citing Connell's supervisory experience as a reason for promoting him is pretextual. This argument is also unpersuasive.

Even in a light most favorable to White, the evidence shows that Amentum knew about White's experience and chose not to credit it because the interviewers did not believe private HVAC experience fit the needs of Amentum's Maintenance Superintendent position. (Doc. 16-4, p. 151:17–154:18) (deposition of Steve Warren, the ultimate promotion decisionmaker); (*id.*, p. 36:4–13). And White presents no evidence that Amentum did not value Connell's military experience or that anyone at Amentum believed private HVAC experience was more valuable that military experience.

Perhaps a reasonable juror would agree with White, and disagree with Amentum, that White's private HVAC experience had value— perhaps even more value than Connell's military experience. But that's not the question. "The inquiry into pretext centers on the employer's beliefs, not the employee's beliefs and, to be blunt about it, not on reality as it exists outside of the decision maker's head." *Alvarez*, 610 F.3d at 1266. In the decision maker's head, experience supervising a maintenance crew in the military was more applicable to the Maintenance Superintendent job than owning an HVAC company and telling three employees "what to do and how to do it and how to conduct [themselves] with the customer . . ." (Doc. 16-1, 107:5-19); (doc. 16-4, p. 151:17–154:18).

Valuing one type of work experience over the other falls squarely within the business judgment of an employer that the court should not second guess. *See also Elrod v. Sears, Roebuck & Co.*, 939 F,2d 1466, 1470 (11th Cir.1991). Further, for pretext evidence to defeat a summary judgment motion, the evidence must show "*both* that the [proffered] reason was false, *and* that discrimination was the real reason." *Ring v. Boca Ciega Yacht Club, Inc.*, 4 F.4th 1149, 1163 (11th Cir. 2021) (internal quotation omitted). Assuming Amentum intentionally, even nefariously, failed to credit White with supervisory experience, White still must show the real reason Amentum didn't credit White was to racially discriminate. White presents no such evidence. So White's second pretext argument fails to create a genuine issue of disputed fact.

c. Qualification: White's final pretext argument is that Amentum wrongly says that White "did not have the desired qualifications" and that Connell "had more of the desired qualifications." (Doc. 24, p. 29). White points out that, unlike Connell, he had five years of SDC maintenance. (Doc. 16-7, p. 37). And White reiterates that Amentum failed to credit the supervisory experience he gained from his private HVAC company.

While it's true that White possessed some experience that Connell did not, it's also true that Connell possessed qualifications and experience that White did not, including 15+ years of mechanical experience, 6–7 years of military experience, possession of an SDC lead certification card, LOTO certified, experience planning and executing plant maintenance outages, and certifications in rigging, welding, and scaffolding. And as Amentum points out, Amentum listed the certificates as desired attributes before it interviewed White and Connell:

**Working Title:** Maintenance Superintendent
- Previous experience in a Maintenance Supervisor/Superintendent role.
- Experience generating boundaries for Lock Out/Tag out and be willing to obtain a Lock Out/Tag Out certification.
- Experience planning and executing plant maintenance outages.
- Experience with software systems related to Work Order Development and Management.
- **Currently hold or previously held certifications in Rigging and Welding.**
- **Currently hold or previously held a certification relating to scaffold building.**
- Experience in facilities maintenance relating to Boilers and HVAC systems.
- Experience generating, reviewing, and modifying Maintenance Procedures.

(Doc. 16-7, pp. 76-77) (circle added).

In short, White second guesses Amentum's decisions on what qualifications mattered and how to weigh the candidates' differing qualifications and experiences. But again, White "is not allowed to recast an employer's proffered nondiscriminatory reasons or substitute his business judgment for that of the employer. Provided that the proffered reason is one that might motivate a reasonable employer, an employee must meet that reason head on and rebut it, and he cannot succeed by simply quarreling with the wisdom of that reason." *Alvarez*, 610 F.3d at 1265–66. And White cannot escape summary judgment by "simply arguing or even by showing that he was better qualified than the [person] who received the position he coveted. . . . [A] plaintiff must show that the disparities between the successful applicant's and his own qualifications were of such weight and significance that no reasonable person, in the exercise of impartial judgment, could have chosen the candidate selected over the plaintiff." *Springer v. Convergys Customer Mgmt. Grp. Inc.*, 509 F.3d 1344, 1349 (11th Cir. 2007) (internal citation omitted). White's evidence doesn't approach a showing that he was *so* much more qualified than Connell that no reasonable employer could have preferred Connell for the job. So White's third pretext argument fails to create a genuine issue of disputed fact.

—

To sum up, Amentum offers direct evidence that supports a fact-finding that it chose Connell over White based on Amentum's weighing of the candidates' qualifications against Amentum's list of desired qualifications. White offers no evidence that would allow a reasonable juror to instead find as a matter of fact that Amentum failed to promote him because of his race. In fact, White testified that he was not claiming the ultimate decision maker discriminated against him because of race. Because White fails to support his fact assertion that Amentum failed to promote him because of race, there is no genuine issue of fact to try, making summary judgment appropriate under Rules 56(a) and 56(e)(3).

14

## **CONCLUSION**

For these reasons, the court **GRANTS** summary judgment for Amentum. (Doc. 15). The court will enter a separate order consistent with this opinion.

**DONE** and **ORDERED** on July 22, 2025.

_____
**COREY L. MAZE**
UNITED STATES DISTRICT JUDGE